1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BINYAMIN TZAFIR,

          Petitioner,

  v.

PAMELA BONDI et al.,

          Respondents.

CASE NO. 25-cv-02126-JHC

ORDER

# I
## INTRODUCTION

This matter comes before the Court on Petitioner Binyamin Tzafir's Petition for Writ of Habeas Corpus (Dkt. # 1) and Motion for Preliminary Injunction (Dkt. # 11). The Court has reviewed the materials filed in support of and in opposition to the petition and motion, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition (Dkt. # 1) and STRIKES the Motion (Dkt. # 11) as moot.

# II
## BACKGROUND

Petitioner is a 57-year-old, non-U.S. citizen who was born in the former Georgian Soviet Socialist Republic. Dkt. # 1 at 1–2. In 1993, Petitioner immigrated to Israel and later obtained

ORDER - 1

Israeli citizenship. *Id*. at 2. He says that he "lost his Israeli citizenship a few years later for religious reasons and is now stateless." *Id.*

In 1999, Petitioner entered the United States with an Israeli passport on a B-2 Visitor's Visa. *Id.* at 5; *see also* Dkt. # 15 at 4. Petitioner came to the United States with his family, and then soon applied for asylum, withholding of removal, and relief under the Convention Against Torture. Dkt. # 1 at 5. Petitioner's B-2 visa expired while his asylum application was pending. *Id.* In 2004, a U.S. immigration court ordered Petitioner and his family removed to Israel. *Id.*; *see also* Dkt. # 15 at 4. Petitioner unsuccessfully appealed his removal decision to the Board of Immigration Appeals and the Ninth Circuit, and in March 2009, this decision became administratively final. Dkt. # 15 at 4–5.

Petitioner alleges that after his appeals, he and his family tried to return to Israel but "Israel refused to issue travel documents, so he was not able to leave." Dkt. # 1 at 2, 5. He also alleges that by this time—spring 2009—the family had lost their Israeli citizenship and had become stateless. *Id*. at 2, 5. Respondents confirm that in spring of 2009, the Department of Homeland Security (DHS) worked with the Israeli consulate to secure travel documents for Petitioner and was informed that Petitioner no longer had Israeli citizenship. Dkt. # 15 at 5. Accordingly, on May 13, 2009, Immigration and Customs Enforcement (ICE) released Petitioner on an Order of Supervision (OSUP). *Id.*; *see also* Dkt. # 1 at 2. The OSUP required Petitioner to check-in with ICE every year, among other conditions. Dkt. # 1 at 2. Petitioner contends that he complied with this arrangement for 16 years, checking in with ICE every year and satisfying the other conditions of his OSUP. Dkt. # 1 at 6. He also asserts that between 2009 and 2025, he maintained his work authorization and had no OSUP violations. *Id*.

Petitioner says that on August 14, 2025, ICE put an ankle monitor on him and told him to report back in two weeks, with a copy of his medical records and a list of his medications. *Id.*

ORDER - 2

When he reported to ICE with these medical documents, ICE told him to submit this information along with additional proof of recent attempts to obtain travel documents to Israel. *Id.* at 7. On October 19, 2025, ICE arrived at his home and detained him. *Id.* He was transferred to the Northwest ICE Processing Center (NWIPC) later that day and has been in detention since. *Id.*; *see* Dkt. # 15 at 5.

Respondents assert that they provided Petitioner with a Notice of Revocation of Release before detaining him. Dkt. # 15 at 5. The Notice of Revocation of Release says, "This letter serves as official notification that your Order of Supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) effective immediately. This decision has been made following a thorough review of your official alien file and a determination that there are changed circumstances in your case." Dkt. # 16-2 at 2. The notice cites 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 as the basis for detention and was signed by Julio S. Hernandez. *Id.*[1]

Petitioner filed a Petition for Writ of Habeas Corpus on October 29, 2025. Dkt. # 1. The Petition claims that Petitioner's ongoing detention at NWIPC violates 8 C.F.R. § 241.4(l), 8 C.F.R. § 241.13(i)(3), 8 U.S.C. § 1231(a), and the Due Process Clause of the Fifth Amendment. *Id.* at 8–9. He requests an order requiring Respondents to immediately release him from their custody and prohibiting Respondents from re-detaining him unless they have executable travel documents and provide him with a notice and a meaningful hearing before re-detention. *Id.* at 8. Respondents counter that Petitioner has been lawfully detained under the applicable detention authorities and his ongoing detention does not amount to an "unconstitutional" or "indefinite"

---

[1] Petitioner's wife and daughter, Marina Tzafir and Sigal Tzafir, were also detained and have filed similar petitions and motions in separate cases before this court. *See* Dkt. # 8; *see also Marina Tzafir v. Bondi et al.*, No. 2:25-cv-02067-JHC; *Sigal Tzafir v. Bondi et al.*, No. 2:25-cv-02070-JHC.

ORDER - 3

detention. Dkt. # 15 at 6–8. They also contend that while detained, Petitioner has been "uncooperative with DHS regarding applications for a travel document from Russia, Ukraine, and Israel." *Id.* at 5. DHS says it is reasonably certain that Petitioner can obtain a travel document from Georgia, Israel, Russia, or Ukraine based on his "demonstrated citizenship or blood ties." *Id.* at 5–6.

On October 31, 2025, Petitioner moved for an Emergency Temporary Restraining Order and Stay of Removal. Dkt. # 2. The Court provisionally granted the motion on October 31, and then granted the motion on November 10, 2025, thereby temporarily enjoining Respondents and their officers, agents, employees, attorneys, and other persons acting on their behalf from removing Petitioner from the Western District of Washington or deporting him from the United States while his habeas petition remains pending. Dkt. ## 3; 9. Soon after, Petitioner moved for a preliminary injunction to extend the temporary injunction and stay of removal until his habeas petition is resolved. Dkt. # 11.

## III
### DISCUSSION

A.   Legal Standards

    1.   Habeas Relief

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

ORDER - 4

2. Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

The traditional test for evaluating due process claims established by *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia*, 459 U.S. 21 (1982). The Court likewise applies the *Mathews* test here. *See also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying the *Mathews* test and collecting cases that employed this test in the context of immigration detention).

ORDER - 5

B.   Analysis

Petitioner contends that he is entitled to habeas relief in part because his continued detention violates his right to due process under the Fifth Amendment. Dkt. # 1 at 3, 9. Respondents do not address Petitioner's due process arguments nor attempt to engage with the *Mathews* factors. *See generally* Dkt. # 15. Instead, Respondents contend that Petitioner's detention is lawful under 8 C.F.R. § 241.13(i) and not "constitutionally indefinite," as Petitioner is likely to be removed in the reasonably foreseeable future. Dkt. # 15 at 6–8. For the reasons below, the Court finds that Petitioner's current detention violates his constitutional right to due process. It thus grants the Petition and declines to address the alternative grounds for habeas relief discussed in the parties' briefing.

1.   Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482.

That the Government allowed Petitioner to remain in the community for more than 16 years after releasing him on supervision only strengthened his liberty interest. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same). Between May 2009 and August 2025, Petitioner maintained his work authorization, consistently checked in with ICE, and cared for his seven children. Dkt. # 1 at 5–

6. This illustrates that he was released long enough to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby changing his constitutional status and affording him a right to due process. *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)) (cleaned up). In detaining Petitioner since October 19, 2025, the Government has undeniably deprived Petitioner of a liberty interest protected by the Due Process Clause.

Although the Government asserts that it has the authority to detain noncitizens during and following their removal proceedings, and that it may revoke an OSUP, *see* Dkt. # 15 at 1–4, such arguments have no bearing on the due process issue before the Court. While the Government may detain noncitizens before removing them, noncitizens must still be afforded due process protections before they are detained. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Accordingly, the first *Mathews* factor favors Petitioner.

2. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, the Government offers only conclusory statements to justify its decision to re-detain Petitioner. For instance, Petitioner's Notice of Revocation of Release states, "Th[e detention] decision has been made following a thorough review of your official alien file and a determination that there are changed circumstances in your case." Dkt. # 16-2 at 2. It also

states, "ICE has determined that you are subject to expedited removal from the United States to the outstanding order of removal against you." *Id.*  But the Notice does not explain these "changed circumstances," nor does it provide any other justification for re-detention or OSUP revocation.

Likewise, the Government's brief asserts that the Petitioner's OSUP was revoked "based on DHS's determination that he could be removed pursuant to the final removal order."  Dkt. # 15 at 5 (citing Dkt. ## 17 at 3; 16-2).  But the Government did not acquire a travel document for Petitioner before his arrest, nor has it provided other evidence to suggest that Petitioner's deportation in October 2025 was imminent.  *See generally* Dkt. # 15.  The Government also fails to explain why it believes its requests for travel documents from Israel (or any other country) will be imminently approved, especially when such requests were formerly denied.  *See generally id*.  The Government also fails to explain why Petitioner was placed on an ankle monitor on August 14, 2025, about one week before he was allegedly supposed to appear at an ICE office.  *See generally id*.; *see* Dkt. # 1 at 6.

Accordingly, the Court finds that the Government fails to support its contention that changed circumstances justify Petitioner's re-detention.  Without such a justification, Petitioner's detention fails to satisfy the essential requirements of due process—notice and an opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333, 348 (internal citation and quotation marks omitted).  The Court thus concludes that the Government's procedures were constitutionally insufficient.

In addition, the Court finds that the risk of erroneous deprivation in Petitioner's case is high.  Since 2009, Petitioner has complied with his OSUP and lived, worked, and maintained his status in the community without incident.  Because more than 16 years have passed since Petitioner was released on supervision, the Court concludes there is a significant risk of an

ORDER - 8

erroneous deprivation of Petitioner's liberty interests if the Government is permitted to re-detain Petitioner without articulating a change in circumstances or providing Petitioner with a meaningful opportunity to be heard.  *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d at 1323 (collecting cases).  Thus, the second *Mathews* factor favors Petitioner.

   3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

The Government fails to assert any specific interest that would counsel against the Court finding a due process violation here.  *See generally* Dkt. # 15.  But the Court still acknowledges that the Government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community."  *Zadvydas*, 533 U.S. at 690.

Although the Court acknowledges that the Government has some interests, it also notes that "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost."  *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Thus, "the government's interest in detaining [a] petitioner without a hearing is 'low.'"  *Id.* (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see E.A. T.-B.*, 795 F. Supp. 3d at 1323 (same).  This is especially true here, as the Government has already determined that Petitioner does not pose a danger to the community, causing it to release him on an OSUP in 2009.  The Government has also provided

no evidence that Petitioner will not appear at future proceedings, and in fact, it is uncontested that for 16 years, Petitioner has complied with his OSUP and diligently appeared whenever he was required to by the Government. On this record, this *Mathews* factor also favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner. The Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, he has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
### CONCLUSION

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1).

(2) ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before his arrest in October 2025.[3] Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) STRIKES the Motion for Preliminary Injunction (Dkt. # 11) as moot.

(4) DIRECTS the clerk to send uncertified copies of this Order to all counsel of record.

---

[3] *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

Dated this 12th day of January, 2026.

*John H. Chun*
John H. Chun
United States District Judge

ORDER - 11