UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BINYAMIN TZAFIR,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

CASE NO. 25-cv-02126-JHC

ORDER

# I

## INTRODUCTION

This matter comes before the Court on Petitioner's Application for Attorneys' Fees.  Dkt. # 21.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.  Being fully advised, for the reasons below, the Court GRANTS the motion in part.

# II

## BACKGROUND

Petitioner is a 57-year-old, non-U.S. citizen who was born in the former Georgian Soviet Socialist Republic.  Dkt. # 1 at 1–2.  In 1993, Petitioner immigrated to Israel and later obtained Israeli citizenship.  *Id*. at 2.  In 1999, Petitioner entered the United States with an Israeli passport

ORDER - 1

on a B-2 Visitor's Visa.  *Id.* at 5; *see also* Dkt. # 15 at 4.  Petitioner came to the United States with his family, and then soon applied for asylum, withholding of removal, and relief under the Convention Against Torture.  Dkt. # 1 at 5.  Petitioner's B-2 visa expired while his asylum application was pending.  *Id.*  In 2004, a U.S. immigration court ordered Petitioner and his family removed to Israel.  *Id.*; *see also* Dkt. # 15 at 4.  Petitioner unsuccessfully appealed his removal decision to the Board of Immigration Appeals and the Ninth Circuit, and in March 2009, this decision became administratively final.  Dkt. # 15 at 4–5.

Later, Petitioner and his family lost their Israeli citizenship.  Dkt. # 15 at 5.  Accordingly, on May 13, 2009, Immigration and Customs Enforcement (ICE) released Petitioner on an Order of Supervision (OSUP).  *Id.*; *see also* Dkt. # 1 at 2.  The OSUP required Petitioner to check-in with ICE every year, among other conditions.  Dkt. # 1 at 2.  Petitioner contends that he complied with this arrangement for 16 years, checking in with ICE every year and satisfying the other conditions of his OSUP.  Dkt. # 1 at 6.  He also asserts that between 2009 and 2025, he maintained his work authorization and had no OSUP violations.  *Id.*

Petitioner says that on August 14, 2025, ICE put an ankle monitor on him and told him to report back in two weeks, with a copy of his medical records and a list of his medications.  After Petitioner complied, ICE arrived at his home and detained him on October 19, 2025.  *Id.*  Respondents say that they provided Petitioner with a Notice of Revocation of Release before detaining him.  Dkt. # 15 at 5.  The notice stated that the decision to revoke Petitioner's OSUP "has been made following a thorough review of [his] official alien file and a determination that there are changed circumstances in [his] case."  Dkt. # 16-2 at 2.  The notice cites 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 as the basis for detention.  *Id.*

Petitioner filed a Petition for Writ of Habeas Corpus on October 29, 2025.  Dkt. # 1.  The Petition argued that Petitioner's ongoing detention at NWIPC violated 8 C.F.R. § 241.4(l), 8

ORDER - 2

C.F.R. § 241.13(i)(3), 8 U.S.C. § 1231(a), and the Due Process Clause of the Fifth Amendment. *Id.* at 8–9. On January 12, 2026, this Court granted his habeas petition. *See* Dkt. # 19.

Petitioner now moves for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, contending that he is the prevailing the party, that the government's position was not substantially justified, and further, and that he is entitled to an enhanced fee award reflecting his counsel's increased specialization and skill. *See generally* Dkt. # 21.

### III

#### DISCUSSION

Section 2412(b) of the EAJA provides that, "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought . . . against the United States[.]" 28 U.S.C. § 2412(b). But if a court "finds that the position of the United States was substantially justified or that special circumstances make an award unjust," fees will not be awarded. 28 U.S.C. § 2412(d)(1)(A).

A.      Entitlement to Attorney Fees

Respondents concede that Petitioner is the prevailing party but argue that their position was substantially justified. *See* Dkt. # 22 at 1–3. They argue that this Court's conclusion, in applying the test under *Mathews v. Eldridge*, that Petitioner's private interests outweigh the government's "does not render the [] Respondents' position unjustified." *Id.* at 3. Petitioner argues that Respondents cannot show that their position was substantially justified because they "ignored the due process protections afforded to noncitizens" and because of their conduct with Petitioner during his detention. *See* Dkt. # 21 at 5–6.

"To be substantially justified, the government's position must have . . . 'had a reasonable basis in law and fact.'" *Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021) (quoting

ORDER - 3

*Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)).  "The test is not whether the government was correct, but whether it was 'for the most part' justified in taking the position that it did."  *Id.* "A position that 'was not contrary to clearly established law' is thus substantially justified."  *Id.* (citing *Li v. Keisler*, 505 F.3d 913, 919–20 (9th Cir. 2007)).  "For the purposes of the EAJA, the government's 'position' includes 'both the government's litigation position and the action or failure to act by the agency upon which the civil action is based.'"  *Benally v. U.S. Off. of Navajo & Hopi Indian Relocation*, 154 F.4th 630, 638 (9th Cir. 2025) (citing *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (citation modified).  The question is here is thus whether the government's re-detention of Petitioner and Respondents' litigation position that due process did not afford him such a hearing before his re-detention were "contrary to clearly established law" at the time.  *Li*, 505 F.3d at 919–20.

The government's actions in re-detaining Petitioner were contrary to clearly established law and thus lacked substantial justification.  Generally, when revoking a noncitizen's OSUP, the government must articulate changed circumstances in the noncitizen's case.  But here, the Court concluded that, despite the government's assertions, Petitioner's revocation notice did not explain what the changed circumstances supposedly were, nor did it provide any other justification to re-detain Petitioner or revoke his OSUP.  *See* Dkt. # 19 at 7–8.  The government's contention that his OSUP revocation was "based on DHS's determination that he could be removed pursuant to the final removal order" was evidently false, since at the time of the re-detention the government had not even attempted to acquire a travel document for that removal.  Dkt. # 15 at 5 (citing Dkt. ## 17 at 3; 16-2).  There was no evidence at the time that Israel had changed its position on his citizenship and was willing to accept him; nor was there any evidence that any other country to which he had a tie would accept him.  In sum, the government's actions in re-detaining Petitioner were contrary to clearly established law and thus lacked substantial

ORDER - 4

justification.  For the same reason, the government's litigation position, which defended these actions, lacked substantial justification.

Based on the above, the Court concludes that Petitioner is entitled to attorney fees.  The Court need not consider Petitioner's argument that he is entitled to attorney fees under the common law based on bad faith.  Dkt. # 21 at 7–9.

B.       Amount of Attorney Fees

Petitioner seeks an enhanced rate for the attorney fees because of the putatively "'distinctive knowledge or specialized skill needful for the litigation in question.'"  Dkt. # 21 at 10 (citing *Pierce*, 487 U.S. at 572).  EAJA permits enhanced hourly rates "based on the special factor of the limited availability of qualified attorneys for the proceedings involved," where such attorneys "possess [1] 'distinctive knowledge' and 'specialized skill" that was [2] 'needful to the litigation in question' and [3] 'not available elsewhere at the statutory rate.'"  *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citing *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005)).  The movant "bears the burden of" meeting the three-part test.  *Love v. Reilly*, 924 F.2d 1492, 1500 (9th Cir. 1991) (Wallace, J., concurring in part) (citing *Pirus v. Bowen*, 869 F.2d 536, 542 (9th Cir. 1989)).

To the first and second elements, Petitioner says his counsel possessed specialized knowledge of immigration law and "specifically of the law governing removal and of the day-to-day process of removal."  Dkt. # 21 at 11.  He claims that many immigration lawyers do not practice removal defense and do not possess knowledge "of the intersection of these bodies of law," i.e., immigration law and constitutional law.  *Id.* at 12.  To the third element, Petitioner asserts with little argument that "there were no attorneys available with the specialized knowledge required for this litigation who would handle this case at the EAJA rates of approximately $250 per hour."  *Id.* at 13.  In support of this contention, Petitioner submits a

**ORDER** - 5

declaration from another attorney, not his counsel, asserting that "I do not believe it would have been possible to find an attorney willing to represent [Petitioner] at the statutory EAJA rate of approximately $250 per hour." Dkt. # 21-5 ¶ 8 (declaration of Melissa Campos-Castaneda).

Petitioner also bases the request for the enhanced fee on the case of *Rahman v. Bondi*, which approved the higher rate for the same counsel. *See* Dkt. # 21 at 14 (citing Dkt. # 53, *Rahman v. Bondi*, No. 24-2132-JHC-TLF, 2026 WL 323046, at *5 (W.D. Wash. Feb. 6, 2026)). There, counsel used the same declaration from the same individual to justify the enhanced fee request.

Here, Petitioner is not entitled to the enhanced rate because there are, apparently, attorneys willing to take cases at the EAJA statutory rate. Respondents cite a case from this District where attorneys were recently willing to work at the EAJA statutory rate, undercutting Petitioner's argument that no attorneys are available to do so. *See* Dkt. # 22 at 4 (citing *M.M. v. Hermosillo*, No. 25-2074-TMC, 2026 WL 252076 (W.D. Wash. Jan. 30, 2026) (motion showing that "Petitioner requests fees and costs at the statutory EAJA rate, adjusted for cost of living in the Ninth Circuit, for time reasonably expended on this case")). No party cited this case to the *Rahman* court. Given *M.M. v. Hermosillo*, the Court does not believe Petitioner has satisfied his burden to show that qualified attorneys were not available elsewhere at the statutory rate; notably, Petitioner had the opportunity to address this issue on reply.

**IV**

**CONCLUSION**

For the reasons above, the Court GRANTS the motion in part and awards Petitioner $4,735.48 in attorney fees.

//

**ORDER** - 6

Dated this 20th day of May, 2026.

John H. Chun
United States District Judge

ORDER - 7